# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| COREY TROTT,<br><br>        Petitioner,<br><br>vs.<br><br>STATE OF IOWA,<br><br>        Respondent. | No. 19-CV-3022-CJW-KEM<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254** |

## I. INTRODUCTION

This matter is before the Court for a decision on the merits of a petition for writ of habeas corpus filed by a state prisoner who claims the State of Iowa violated his constitutional rights. A jury convicted petitioner of first-degree murder for killing a law enforcement officer. For the reasons that follow, the Court **denies** the petition and **dismisses** this case.

## II. PROCEDURAL HISTORY OF THIS FEDERAL CASE

On May 10, 2019, petitioner filed a pro se petition seeking a writ of habeas corpus under Title 28, United States Code, Section 2254 (Doc. 1) and a Motion to Appoint Counsel (Doc. 2). Petitioner raised eight claims in his petition: 1) trial counsel was ineffective for failing to challenge the arrest warrant and failing to present it to the jury as evidence; 2) trial counsel was ineffective in failing to strike potential jurors; 3) trial counsel was ineffective for failing to challenge DCI Agent Jon Turbett's testimony about Trott's statements; 4) trial counsel was ineffective for failing to file a notice of self-defense; 5) trial counsel was ineffective for failing to depose and investigate Calhoun County Deputy Jeff Feldhans; 6) sufficiency of the evidence; 7) Trott's right to remain

silent and the sufficiency of the *Miranda* warnings he received; and 8) ineffective assistance of appellate counsel regarding Agent Turbett's testimony. (Doc. 1).

On February 19, 2020, the Court denied petitioner's motion to appoint counsel. (Doc. 3). In its order, the Court found that petitioner failed to exhaust his state court remedies on all of his claims except for Claim 7: an assertion that the state violated his Fifth Amendment right to remain silent. (*Id.*, at 4-6). Thus, the Court ordered respondent to provide the Court with the relevant state court documents and to file a responsive pleading as to only Claim 7. (*Id.*, at 7). After the Court granted an extension of time, respondent filed an answer and provided the Court with the state court documents on May 18, 2020. (Docs. 8 & 9). On May 20, 2020, the Court established a briefing schedule. (Doc. 13). After an extension of those deadlines, the parties fully briefed the case (Docs. 16, 17, 18, 19 & 20), and on December 21, 2020, the Court deemed the case ready for decision (Doc. 21).[1]

### III. FACTUAL AND PROCEDURAL HISTORY OF THE STATE CASE

"On September 8, 2013, Trott allegedly assaulted his mother at his home. Officers arrived to the home and when they tried to go into the residence, Trott shot at and killed one officer." *Trott v. State*, No. 18-0624, 2019 WL 1300418, at *1 (Iowa Ct. App. Mar. 20, 2019). As for the facts surrounding petitioner's incriminating statements, the Iowa Court of Appeals previously summarized them in deciding his original appeal, which the Court finds accurate upon its own review of the record and reproduces here:

---

[1] In his briefing (Docs. 16 & 20), petitioner attempts to litigate his other claims, taking issue with the Court's prior order finding them to be procedurally defaulted. To the extent that petitioner is asking the Court to reconsider its initial review order, the request is denied.

2

On September 13, 2013, Corey Trott shot and killed Rockwell City Police Department Officer Jamie Buenting. Relevant here are the events following the shooting, which are generally undisputed.

Trott surrendered himself to Iowa State Patrol Trooper Kevin Krull, and Trott was handcuffed and placed on the ground. At approximately 5:36 a.m., while surrounded by officers with their weapons out, Trooper Krull read Trott his rights as set out in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), from a card issued by the Iowa Department of Public Safety. The front side of that card, titled "Miranda Warning," states:

1. You have the right to remain silent.
2. Anything you say can and will be used against you in a court of law.
3. You have the right to talk to a lawyer and have him present with you while you are being questioned.
4. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish.
5. You can decide at any time to exercise these rights and not answer any questions or make any statements.

The reverse side of the card, titled "Waiver," states:

After the warning and in order to secure a waiver, the following questions should be asked and an affirmative reply secured to each question.
1. Do you understand each of these rights I have explained to you?
2. Having these rights in mind, do you wish to talk to us now?

Trooper Krull read the "Miranda Warning" side of the card to Trott. The trooper then asked Trott if he "understood each of these rights" he explained to Trott, to which Trott answered, "Yes." The trooper next asked Trott the second question as stated on the card: "Having these rights in mind, do you wish to talk to us now?" Trott answered, "No." The trooper then stopped talking to Trott and made no further attempts to question Trott. Trott made no further statements at that point.

Calhoun County Chief Deputy Scott Anderson arrived at the scene to take Trott into custody. At that time, Trott was handcuffed and face

3

down on the ground. The deputy placed Trott into the back seat of his patrol car, and Trott was re-cuffed and shackled. Chief Deputy Anderson then read to Trott the five statements of rights set forth above from a copy of the same "Miranda Warning" card. After reading this to Trott, the deputy asked Trott if he understood, and Trott verbally responded, "Yes, I understand." The deputy did not ask Trott the second "waiver" question—if Trott wished to talk—but the deputy did not have any further conversation with Trott.

Trott was transported to the Sac County jail. Around 7 a.m., Agent John Turbett, a special agent with the Iowa Division of Criminal Investigation, arrived at the jail to interview Trott. Agent Turbett knew the *Miranda* warning had been previously read to Trott but was "told [Trott] had not invoked any of his rights."

Shortly after arriving, Agent Turbett went to the jail's interrogation room to wait for Trott, and the subsequent interview was recorded. A deputy then brought Trott to the room and left. The agent first asked Trott if he needed anything to eat or drink or to use the restroom, to which Trott answered, "No." Thereafter, the following exchange between the agent and Trott occurred:

[AGENT]: . . . I'm an officer, a police officer as well and, and I know this was a really a, a tough morning and I know there's, there's been some buildup for you with this and, and some things going on in your life. At least that's what I understand and, and, uhm, Corey, if you're okay what I'd like to do is maybe just sit down and talk to you a little bit about what's been going on, uhm, and, uh, maybe, maybe you'd like somebody to, to maybe talk to right now and, and, and help make some sense of things and I'd, I'd love to be that guy right now.

[TROTT]: Okay.

[AGENT]: And sit down and talk to ya, uhm, if I can do that. Uhm, uh, I know, I think somebody had, had, uh, gone over some, some things with you, some, some rights earlier, and you understand—

[TROTT]: Right.

4

[AGENT]:—those?

[TROTT]: Right.

[AGENT]: Okay. Okay. Uhm, I've got those here, too, and I'll just, I'll just read through those with you—

[TROTT]: Okay.

[AGENT]:—real quick, just so you know . . . real quick, just so you know I know you've been read, I've got a little card here. You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have a right to consult with a lawyer before you answer any questions or, uh, make any statement, and have a lawyer present during questioning. And if you can't afford one, one will be provided for you free of cost. That's the same thing that somebody else had—

[TROTT]: Right.

[AGENT]:—read you earlier? Okay. Great. Uhm, and you understand that?

[TROTT]: Right.

[AGENT]: Okay. Okay. And you're cool talking to me for a little bit?

[TROTT]: Yeah.

[AGENT]: I appreciate it. Thank you.

Agent Turbett then continued his interview with Trott.

The interview lasted a little over two hours, not including the fifteen-minute break Trott was given during the interview. Trott never expressed before, during, or at the end of the interview that he wished to invoke his right to a lawyer. Trott never gave the agent any indication he did not want to speak with the agent and remain silent, nor did Trott "take any steps" to end or cut off the interview. However, Trott was never asked to sign a

5

> written waiver of his *Miranda* rights, nor was he explicitly orally asked if he wished to waive his *Miranda* rights. Trott was not advised, other than the *Miranda* warning read to him, the "consequences of giving [the agent] the statement." Beyond asking Trott at the jail if he would speak to Agent Turbett, Trott was not badgered or further coerced by law enforcement officials to waive his *Miranda* rights and speak with the agent.

*State v. Trott*, No. No. 14–1608, 2015 WL 9450670, at *1-2 (Iowa Ct. App. Dec. 23, 2015) (footnote omitted).

On September 13, 2013, petitioner was charged in Calhoun County, Iowa with first degree murder of a law enforcement officer. *State v. Trott*, 02131 FECR5 04757 (Calhoun County, Iowa 2013). On September 8, 2014, a jury found him guilty and he was subsequently sentenced to life in prison. *See* (Doc. 1, at 1). Petitioner appealed his conviction, arguing that authorities violated his right to counsel and that the trial court should have sustained his motion to suppress his statements made to law enforcement Agent Turbett. *Trott*, 2015 WL 9450670, at *4-8. On December 23, 2015, the Iowa Court of Appeals affirmed the conviction and concluded petitioner failed to preserve the right-to-counsel issue, and stating that petitioner's "right to remain silent was scrupulously honored and he knowingly and voluntarily waived the right [to remain silent]." *Id.*, at *8. Petitioner sought further review, which the Iowa Supreme Court denied on February 22, 2016, with procedendo entering the same day.

On December 19, 2016, petitioner filed a post-conviction relief case in state court, arguing that his attorneys were ineffective for various reasons. *Trott v. State*, 02131 PCCV 502038 (Calhoun County, Iowa 2018). On January 4, 2018, the Iowa District Court denied that application. Petitioner filed a timely appeal, which the Iowa Court of Appeals denied on March 20, 2019. *Trott*, 2019 WL 1300418, at *5. Petitioner did not seek further review and procedendo entered on April 30, 2019.

Although the Iowa Court of Appeals denied petitioner's ineffective assistance of trial counsel claims, it stated the record was not sufficiently developed to consider his claims related to the ineffectiveness of his appellate counsel and post-conviction counsel. *Id.*, at *4. For that reason, the Iowa Court of Appeals directed him to bring those claims in a subsequent post-conviction action. *Id.*, at*3-4. On January 30, 2020, Trott filed a second post-conviction case, which is still pending. *Trott v. State*, 02131 PCCV 502350 (Calhoun County, Iowa 2020).[2]

### IV. STANDARDS FOR SECTION 2254 HABEAS CORPUS RELIEF

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Title 28, United States Code, Section 2254, a federal court will not grant a petition for writ of habeas corpus "unless it appears that –(A) the applicant has exhausted the remedies available in the courts of the State [the exhaustion doctrine]; or (B)(i) there is an absence of available State corrective process; or (B)(ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A)-(B); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (holding that under the AEDPA, a petitioner must exhaust available state remedies). "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he

---

[2] Accordingly, petitioner may still exhaust his claim of ineffective assistance of appellate counsel (Claim 8) in the state court. In its February 19, 2019 order, however, this Court held that because of the time that elapsed between the denial of his first post-conviction case, and when he filed the second post-conviction case, Claim 8 is now time barred for the purposes of his federal Section 2254 petition. (Doc. 3, at 5). The Court also noted in that order that claims of ineffective assistance of post-conviction counsel cannot form the basis for a Section 2254 action because there is no constitutional right to post-conviction counsel. *See, e.g.*, *Davila v. Davis*, 137 S. Ct. 2058, 2062 (2017).

presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). "[T]he exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *Id.* at 845.

In Iowa, a prisoner must seek review through the "ordinary and established appellate review process" which includes an application for further review in the Iowa Supreme Court. *Welch v. Lund*, 616 F.3d 756, 758-59 (8th Cir. 2010) (quoting *Dixon v. Dormire*, 263 F.3d 774, 777 (8th Cir. 2001)) (holding that an Iowa prisoner failed to exhaust his claims in Iowa when his appeal of a state district court's decision to the Iowa Supreme Court was "deflected to the Iowa Court of Appeals" and he failed to file for further review in the Iowa Supreme Court).

Even when a prisoner's claim has been fully adjudicated in state court, a federal court still may not grant habeas relief unless the state court adjudication:

> (1) [R]esulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [R]esulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) ("In the habeas setting, a federal court is bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions."). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curium) (citation and internal quotation marks omitted); *see also Nash v. Russell*, 807 F.3d 892, 896 (8th Cir. 2015) (holding that under the AEDPA, a federal court can grant habeas relief "only if the state court's decision was contrary to,

or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States") (citation and internal quotation marks omitted).

"[C]ontrary to . . . clearly established Federal law" as referenced in Section 2254(d)(1), means that the "state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law, or [ ] the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and writing for the majority) (second alternation in original). "[C]ircuit precedent does not constitute 'clearly established Federal law' . . .." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting 28 U.S.C. § 2254(d)(1)). Federal courts must be deferential in determining if the state court decision was based on "an unreasonable determination of the facts" as described in Section 2254(d)(2). "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The burden is on petitioner, and it is a heavy one. "The AEDPA standard is difficult to meet as it is intended as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Nash*, 807 F.3d at 897 (quoting *Harrington*, 562 U.S. at 102-03).

## V. DISCUSSION

Petitioner's one claim before the Court asserts that the state court erred when it denied his motion to suppress his incriminating statement to Agent Turbett on the ground that it violated his right to remain silent.[3] *See* (Doc. 1, at 84-87). The Iowa Court of Appeals rejected this argument on direct appeal. *Trott*, 2015 WL 9450670. There, the Iowa Court of Appeals reviewed the case law, including *Miranda v. Arizona*, 384 U.S. 436, 479 (1966), and its progeny, primarily relying on *Michigan v. Mosley*, 423 U.S. 96, 104 (1975). *Id.*, at *4-5. The Iowa Court of Appeals noted that petitioner did not raise a violation of his right to counsel before the district court; rather, petitioner only claimed a violation of his right to remain silent. *Id.*, at *5. Thus, the Iowa Court of Appeals found petitioner failed to preserve the right to counsel issue for appellate review.[4] *Id*. The Iowa Court of Appeals did review and reject on its merits petitioner's claim that the state violated his right to remain silent, finding petitioner's "right to remain silent was scrupulously honored." *Id.*, at *7. Specifically, the court reasoned:

> Here, like in [*State v.*] *Palmer,* [791 N.W.2d 840, 845–87 (Iowa 2010)] and *Mosley*, after Trott invoked his right to remain silent, no interrogation immediately followed. *See Palmer*, 791 N.W.2d at 846 (citing *Mosley*, 423 U.S. at 97–98, 104–06). Again, like in *Palmer* and *Mosley*, Trott was given the *Miranda* warning again prior to Agent Turbett's interview. *See id.* While the time period between Trott's original "no" response to Trooper Krull's waiver question was only about two hours, this is the same amount of time that passed in *Mosley*, and the Supreme Court found that amount of time was "a significant period of

---

[3] Although respondent is correct that the Court did not explicitly dismiss any ineffective-assistance-of-counsel claims related to this ground in its initial order, the Court agrees with respondent's analysis that petitioner has procedurally defaulted any such claim by failing to fully exhaust this claim in state court. (Doc. 19, at 14-20).

[4] This was an adequate and independent state law ground for rejection of this claim that precludes federal habeas review. *See Walker v. Martin*, 562 U.S. 307, 316 (2011). To the extent petitioner's Claim 7 is read to incorporate this claim, it is procedurally defaulted.

10

> time." Finally, though Agent Turbett's interview with Trott was related to the crime for which Trott was incarcerated, this is but "one of the factors to consider under the totality of the circumstances." *Id.* at 849. The *Mosley* Court "clearly decided the invocation of the right to remain silent did not 'create a per se proscription of indefinite duration upon any further questioning *by any police officer on any subject*, once the person in custody has indicated a desire to remain silent.'" *Id.* (citing *Mosley*, 423 U.S. at 102–03). Given the totality of the circumstances, Trott's right to remain silent was scrupulously honored.

2015 WL 9450670, at *7. The court further found that petitioner "knowingly and voluntarily made a statement to the agent, so he waived his right to remain silent." *Id.*, at *8. In reaching this conclusion, the court reasoned:

> Here, Trott was given the *Miranda* warnings three different times, and his invocation of his right to silence following the first warning evidences he knew both how to invoke his rights and the consequences of abandoning his rights. Additionally, while Trott may have been tired when he was interviewed by Agent Turbett, there is no evidence in the record that Trott was intimidated, coerced, or deceived into waiving his right to remain silent by the agent or anyone. Though Trott's competency was initially challenged—the court found probable cause Trott was "suffering from a mental disorder which may prevent [him] from appreciating the charge, understanding the proceedings, or assisting effectively in his defense"—Trott was evaluated and determined to be competent to stand trial. The evaluating physician specifically found Trott "understands the charges against him. He is able to work effectively with his defense counsel without interference of any psychological symptoms even though he has a diagnosis of paranoid personality disorder. He has a rational and factual understanding of the court process, including the key personnel and their functions." There is no evidence his disorder rendered him incapable of understanding his rights or waiving his rights. In these circumstances, Trott knowingly and voluntarily made a statement to the agent, so he waived his right to remain silent. *See id.* at 387; *see also Palmer*, 791 N.W.2d at 849.

*Id.*, at *8.

Here, the Court finds that the Iowa Court of Appeals did not make an unreasonable determination of the facts or reach a legal conclusion that was clearly contrary to established federal law. To the contrary, the Court finds that the Iowa Court of Appeals properly relied on and applied the Supreme Court's *Mosely* decision in finding that the agent scrupulously honored petitioner's right to remain silent. The facts in petitioner's case were sufficiently similar to those in *Mosely* that this Court cannot find that the Iowa Court of Appeals decision was contrary to, or involved an unreasonable application of, the *Mosley* decision.

The Court reaches the same conclusion about the Iowa Court of Appeals' finding that petitioner knowingly waived his right to remain silent. The court applied the Supreme Court's decision in *Berghuis v. Thompkins*, 560 U.S. 370, 383 (2010). 2015 WL 9450670, at *7. Its application of *Berghuis* was reasonable. A waiver is "knowing and intelligent" when it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right, and a waiver is "voluntary" when the court can determine that the waiver was a product of the suspect's free and deliberate choice. *Berghuis*, 560 U.S. at 382-83. Unlike the requirement that a suspect unambiguously and unequivocally invoke *Miranda* rights, a suspect's waiver of those rights need not be explicit. *See id.* at 383–84. Rather, "[a]n 'implicit waiver' of the 'right to remain silent' is sufficient to admit a suspect's statement into evidence." *Id.* at 384. As the Iowa Court of Appeals noted, petitioner was thrice given his *Miranda* warnings and indicated that he understood them. There was no evidence of coercion or pressure. Again, the Court cannot find that the Iowa Court of Appeals unreasonably applied Supreme Court precedent in finding that petitioner knowingly waived his right to remain silent.

Petitioner's reliance on *Greenwald v. Wisconsin*, 390 U.S. 519, 520 (1968), is misplaced. In *Greenwald*, the officers did not provide the defendant with *Miranda*

warnings. 390 U.S. at 520-21. *Greenwald* was also under a form of coercion, having been placed in a cell overnight with only a board attached to the wall for a bed, and was refused food and medical treatment until he confessed. *Id.* at 520. Here, officers repeatedly provided petitioner with *Miranda* warnings and there was no coercion.

Accordingly, the Court denies relief on petitioner's sole remaining ground, Claim 7.

## VI. CERTIFICATE OF APPEALABILITY

A certificate of appealability may be granted only when a petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749, 759-60 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Thus, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Here, the Court finds that petitioner has not made the necessary showing for his habeas claims. Thus, the Court will not grant a certificate of appealability. If petitioner desires to seek further review of his petition, he may request a certificate of appealability from a Judge of the United States Court of Appeals for the Eighth Circuit. *See Tiedeman v. Benson*, 122 F.3d 518, 520-22 (8th Cir. 1997).

## VII. CONCLUSION

For the reasons stated, petitioner's petition for writ of habeas corpus is **denied** and this action is **dismissed**. No certificate of appealability will be issued for any of petitioner's claims.

**IT IS SO ORDERED** this 20th day of January, 2021.

_____
C.J. Williams
United States District Judge
Northern District of Iowa